# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**FILED**

May 21, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**SPARTAN MINING COMPANY,**
**Employer Below, Petitioner**

**vs.)    No. 17-1003**  (BOR Appeal No. 2052073)
                        (Claim No.  2016017206)

**JOHN ANDERSON,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Spartan Mining Company, by Sean Harter, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. John Anderson, by Donald C. Wandling, his attorney, filed a timely response.

The issue on appeal is the compensability of Mr. Anderson's claim for worker's compensation benefits. On May 25, 2016, the claims administrator denied Mr. Anderson's claim for bilateral carpal tunnel syndrome. The Office of Judges reversed the claims administrator in its June 15, 2017, Order and held the claim compensable. The Order was affirmed by the Board of Review on October 20, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the Board of Review's decision is based upon a material misstatement or mischaracterization of the evidentiary record. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion.

Mr. Anderson worked as a section boss at Spartan Mining Company for three and half years until he was laid off on November 10, 2015. The next day he was treated by Vellaiappan Somasundaram, M.D., for a history of chronic neck and back pain. Mr. Anderson was diagnosed with osteoarthrosis, cervicalgia, brachial neuritis or radiculitis, lumbago, and thoracic or lumbosacral neuritis or radiculitis. Dr. Somasundaram recommended a lumbar spine x-ray and a cervical spine MRI. Mr. Anderson did not report any symptoms with his hands on this visit.

1

On November 30, 2015, EMG/NCS testing was performed by Dr. Somasundaram for Mr. Anderson's complaints of neck pain radiating to the bilateral upper extremities with numbness, tingling, pain, and weakness which had been present for two years. The testing revealed moderate to severe bilateral sensorimotor demyelinating and axonal medial nerve neuropathy at the wrist consistent with bilateral carpal tunnel syndrome and right motor axonal nerve neuropathy at the elbow consistent with right cubital tunnel syndrome. On December 10, 2015, Mr. Anderson completed the employees' and physicians' report of injury alleging injuries to his arms and hands as the result of many years of work bolting and lifting heavy materials. He listed his date of last exposure as November 10, 2015. Dr. Somasundaram completed the physician section of the form on December 15, 2015, and noted the date of initial treatment as November 30, 2015. He listed Mr. Anderson's diagnoses as bilateral carpal tunnel syndrome and right cubital tunnel syndrome and indicated this was due to an occupational injury.

The Carpal Tunnel Syndrome Report was completed on January 13, 2016, and shows a previous diagnosis of carpal tunnel syndrome on June 30, 2011, based on clinical symptoms, as well as a previous diagnosis of cervicalgia and brachial neuritis on March 10, 2014. The date of injury was listed as gradual and repetitive with November 30, 2015, listed as the actual date. It was noted that Mr. Anderson was five feet eleven inches tall and weighed 267 pounds.

Prior to working for Spartan Mining Company, on September 9, 2010, Mr. Anderson was treated by Teresa Robinson, CFNP, for hypertension, lumbar spine pain, and cervical spine pain. A history of back pain, arthritic condition, weakness, and carpal tunnel syndrome was noted. The medication history included Neurontin. On December 28, 2010, Mr. Anderson was seen for hypertension, back and neck pain, fatigue, and hand weakness. Mr. Anderson said the original onset of his hand weakness was six years ago and the condition had been worsening.

Christopher Martin, M.D., performed a medical records review on March 17, 2016. He noted Mr. Anderson had been diagnosed with carpal tunnel syndrome on June 30, 2011, but that the reasoning for the 2015 EMG/NCS studies showed a two year history of pain radiation to both of Mr. Anderson's arms. Mr. Anderson also had a history of numbness, tingling, pain, and weakness in his arms. Dr. Martin opined that pain radiating from the neck is not typical for carpal tunnel syndrome. He noted that the carpal tunnel syndrome report referenced diagnoses of cervicalgia and brachial neuritis on March 10, 2014, and that those diagnoses can cause the clinical findings seen in Mr. Anderson. Dr. Martin was unable to confirm if Mr. Anderson had carpal tunnel syndrome because the diagnosis should be based on a clinical diagnosis and not just EMG/NCS testing.

On May 17, 2016, Dr. Martin authored a second report after reviewing Mr. Anderson's job description. Dr. Martin opined that Mr. Anderson's job description did not support job duties with the type of ergonomic exposure that is associated with an increased risk of carpal tunnel syndrome. In his opinion, Mr. Anderson did not have carpal tunnel syndrome. But, if the assumed diagnosis was carpal tunnel syndrome, then it would not be related to Mr. Anderson's work duties as a section production supervisor. He had worked as a supervisor for the previous ten years and as an equipment operator for twenty-five years prior to that. In Dr. Martin's opinion, if Mr. Anderson's work posed a risk of developing carpal tunnel syndrome, it would

2

have been expected to develop while he was an equipment operator, not a supervisor. Dr. Martin also noted that Mr. Anderson had been diagnosed with bilateral carpal tunnel syndrome in June of 2011, prior to the time he started working for the employer. Therefore, his symptoms predated his employment by one year. Based on this report, the claims administrator rejected the claim on May 26, 2015.

On September 2, 2016, Mr. Anderson testified via deposition that he last worked on November 10, 2015, when he was laid off. He worked for Spartan Mining Company from June of 2012 through November 10, 2015, and prior to that he worked for a coal mine in Kentucky from 1994 until 2012. At Spartan Mining Company, he worked as a section boss which required him to keep the section running; build stoppings with seventy to eighty pound cinder blocks; hang fly pads and curtains; use a hammer and nails; and run a scoop, miner, and roof bolter continuously. He had worked in the mines for at least thirty-five years. Prior to the EMG/NCS testing in 2015, Mr. Anderson said he had problems with his hands going numb and giving out. He first noticed the problems in 2010 but it got worse in 2014. While working for Spartan Mining, he worked about thirty minutes a day doing bolt top two to three times per week. Since he has stopped working, his hands still hurt.

Prasadarao Mukkamala, M.D., performed an independent medical evaluation on September 29, 2016. Mr. Anderson complained of numbness and aching in both hands. He told Dr. Mukkamala that he retired on November 10, 2015, and that he never missed work due to hand problems. His symptoms had not improved since he stopped working. Dr. Mukkamala opined that the "clinical picture" was suggestive of bilateral carpal tunnel syndrome. He also opined that the EMG/NCS testing was not credible, as it was technically a poor study. Dr. Mukkamala found no evidence of right cubital tunnel syndrome. The bilateral carpal tunnel syndrome occurred naturally and was not due to occupational activities. The job description for Mr. Anderson's job did not include job demands that involved the degree of repetition or force expected to cause carpal tunnel syndrome. He noted Mr. Anderson's increased body mass index was a significant non-occupational factor for carpal tunnel syndrome. He also opined that Mr. Anderson's work as a section production supervisor did not expose him to an increased risk for the development of carpal tunnel syndrome and found the condition was not related to Mr. Anderson's work.

On December 12, 2016, Bruce Guberman, M.D., performed an independent medical evaluation. Mr. Anderson told Dr. Guberman that he first noted numbness and tingling in his hands in 2010 or 2011 and the symptoms progressively worsened. His hand symptoms stabilized initially after he stopped working but progressed in the two to three months prior to Dr. Guberman's evaluation. Mr. Anderson took Motrin for his multiple joint symptoms, including the carpal tunnel syndrome. Dr. Guberman noted Mr. Anderson continued to have numbness, tingling, and weakness in both hands. Mr. Anderson told Dr. Guberman that half of his work day was spent supervising and the other half was spent performing physical labor. His work involved the use of his hands to lift, carry, push, pull, and use tools. With his previous employers, Mr. Anderson had worked riding a deck with levers, operating a miner, and as a roof bolter. He had prior work injuries to his lumbar spine and neck as well as a history of high blood pressure and black lung disease. Dr. Guberman diagnosed bilateral carpal tunnel syndrome due to the

cumulative trauma due to work. The work activities that involved frequent and forceful use of Mr. Anderson's hands in awkward positions and subjected him to vibration caused the carpal tunnel syndrome. Dr. Guberman noted Mr. Anderson's obesity was a predisposing condition to carpal tunnel syndrome. However, in his opinion Mr. Anderson would not have developed carpal tunnel syndrome if it were not for his work activities.

Syam Stoll, M.D., performed an independent medical evaluation on February 1, 2017. Mr. Anderson told Dr. Stoll that he had bilateral arm pain from his shoulders to his hands, which increased at night. Mr. Anderson had a history of chronic pain due to osteoarthritis in his neck, arm, hand, and knees. Dr. Stoll noted Mr. Anderson reported a nine year history of bilateral hand pain when he was evaluated on January 11, 2016, by Devesh Sharma, M.D., whose medical records show Mr. Anderson reported constant and worsening pain. The history was significant for chronic neck pain. Dr. Stoll noted a March 12, 2008, nerve conduction study that showed significant motor/sensory peripheral neuropathy of the left upper extremity and a diagnosis of left carpal tunnel syndrome with the possibility of superimposed right carpal tunnel syndrome. Mr. Anderson had also been diagnosed with cervical degenerative disc disease. Dr. Stoll opined that there had been an incomplete work-up of the etiology of Mr. Anderson's bilateral upper extremity pain. Cervical spondylosis and cervical radiculopathy mimic peripheral nerve entrapment. As Mr. Anderson had a history of cervical spine problems, his symptoms may be related to the cervical spine. Additionally, the pain and carpal tunnel syndrome diagrams Mr. Anderson completed prior to his evaluation did not dermatomally correlate with carpal tunnel syndrome and was more consistent with cervical radiculopathy. Dr. Stoll also opined that the diagnoses of bilateral carpal tunnel syndrome and right cubital tunnel syndrome were questionable due to the poor quality of Dr. Soma's EMG/NCS testing. Under the assumption that Mr. Anderson did have bilateral carpal tunnel syndrome, it was Dr. Stoll's opinion that it was due to Mr. Anderson's severe obesity and age and was not related to his occupation as a section production supervisor.

The Office of Judges reversed the claims administrator's decision and held the claim compensable for bilateral carpal tunnel syndrome on June 15, 2017. It found the medical opinions of Drs. Somasundaran and Guberman to be more reliable than those of Drs. Martin, Mukkamala, and Stoll. Dr. Martin relied, in part, on a job description in forming his opinion. However, the job description was not submitted into evidence so the Office of Judges was unable to determine if the job description was specific to Mr. Anderson's position. Additionally, the job description relied upon by Dr. Stoll was not reliable because it did not accurately reflect Mr. Anderson's physical activities at work. The Office of Judges determined that "Dr. Guberman's report more fully and accurately considers the specific occupational hazards for the development of carpal tunnel syndrome to which Mr. Anderson was exposed". The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on October 20, 2017.

After review, we disagree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. Mr. Anderson was diagnosed with bilateral carpal tunnel syndrome in 2010, which was at least a year before he started working for Spartan Mining Company. In 2010, Mr. Anderson stated his hand weakness started six years before and had been

gradually worsening. That means his bilateral carpal tunnel symptoms started as early as 2004. The Board of Review was correct in that a preponderance of evidence supports the fact that Mr. Anderson has bilateral carpal tunnel syndrome. However, Dr. Somasundaran noted when he performed the EMG/NCS studies that Mr. Anderson had been experiencing the symptoms for two years. Additionally, Dr. Somasundaran did not associate the bilateral carpal tunnel syndrome to Mr. Anderson's work for Spartan Mining Company. Dr. Guberman noted that Mr. Anderson had been diagnosed with bilateral carpal tunnel syndrome in 2010 or 2011 after using his hands for many years in the mines. He also noted that Mr. Anderson's symptoms worsened and electromyography studies confirmed the bilateral carpal tunnel syndrome diagnosis. Dr. Guberman opined that the "cause of the claimant's bilateral carpal tunnel syndrome is the work activities involving the frequent and at times forceful use of his hands in awkward positions and at times subjected to vibration". The Board of Review's reliance on Drs. Somasundaran and Guberman's opinions in regard to the diagnosis of bilateral carpal tunnel syndrome was not misplaced. However, it erred when it failed to find Mr. Anderson had been diagnosed with bilateral carpal tunnel syndrome in 2010 and had continued to have the symptoms before, during, and after his employment with Spartan Mining Company. Mr. Anderson's diagnosis of bilateral carpal tunnel syndrome pre-dated his employment with Spartan Mining Company, and therefore, cannot be causally related to his work activities while in its employ.

For the foregoing reasons, we find that the decision of the Board of Review is based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is reversed and remanded with instructions to reinstate the claims administrator's May 25, 2016, rejection of the claim.

Reversed and Remanded.

**ISSUED: May 21, 2018**

**CONCURRED IN BY:**
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

**DISSENTING:**
Chief Justice Margaret L. Workman
Justice Robin J. Davis

5